```
UNITED STATES DISTRICT COURT
   MIDDLE DISTRICT OF FLORIDA
      FORT MYERS DIVISION
```

HENRY POLITE,

              Plaintiff,

vs.                           Case No. 2:07-cv-158-FtM-29SPC

LIBERTY BEHAVIORAL HEALTH CARE, INC.; GEO GROUP, INC.; TIMOTHY BUDZ; KERI FITZPATRICK; GEORGE EMANOILIDIS; LYNNE MCNAMARA,

              Defendants.
_____

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of the Motion for Judgment on the Pleadings (Doc. #41, Motion) filed on behalf of Defendants Budz, Fitzpatrick, Emanoilidis, and McNamara. The Court entered an Order (Doc. #43) directing Plaintiff to file a response to the defendants' motion. Plaintiff did not to respond to the motion and the time to do so has long expired. This matter is ripe for review.

**II.**

Plaintiff, who is proceeding *pro se*, initiated this action by filing a Civil Rights Complaint (Doc. #1) on March 12, 2007. Plaintiff is civilly detained at the Florida Civil Commitment Center (hereinafter "FCCC") pursuant to the Jimmy Ryce Act, Florida Statute § 394.910, *et. seq*. Plaintiff later submitted an "Amended Civil Rights Action Complaint and Tort Claims" (Doc. #8, Amended

Complaint), which is the operative complaint in this action. The Court entered an Order (Doc. #15) dismissing certain defendants and claims, *sua sponte*, in the Amended Complaint.

The Amended Complaint names the defendants in both their official and individual capacities and broadly alleges violations of Plaintiff's rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution; Article I, §§ 2, 9, 17, 18 of the State of Florida's Constitution, and Florida Statute § 394.459(4)(c). Amended Complaint at 3-4. In general, Plaintiff alleges his constitutional rights are being violated by Defendants for failure to include him in the Sex Offender Treatment Program.

The Amended Complaint sets forth the following factual narrative in date chronological order. Id. at 4-7. In February 2003, Plaintiff was civilly committed to the FCCC and consented to sex offender treatment. On October 31, 2005, Plaintiff states that he admitted to FCCC officials that he sexually assaulted another resident at the FCCC.[1] Id. at 5. As a result of his admission, Plaintiff was given a fourteen-day quad restriction and transferred to a different quad. Id. Because of his move from the initial quad, he was separated from other residents in D-dorm, who

---

[1]Initially, the Complaint sets forth an incident that occurred on July 8, 2003, when Plaintiff was placed in "unlawful seclusion" for "attempted assault" on an FCCC resident. Amended Complaint at 5. On July 22, 2003, Mrs. White "recommended" that Plaintiff be placed on "dorm restriction." Id. Mrs. Lane changed the recommendation from "dorm restriction" to "wing restriction," in spite of resident David Turner telling Lane that Plaintiff was only horse playing. Id.

previously assisted him, pursuant to policy, in completing his assignments given in the Sexual Offender Treatment Program at the FCCC. Id. Because Plaintiff is illiterate and he did not have the assistance of the residents, Plaintiff explains that he withdrew his consent to participate in the treatment program. Id.

In September 2006, the Clinical Therapist at the FCCC, Defendant McNamara, told Plaintiff that if he completed "MRT,"[2] then she would "put him in sex offender treatment in H-Dorm." Id. After Plaintiff completed MRT in January 2007, Defendant McNamara told Plaintiff she could recommend that he be placed in F-Dorm and further advised Plaintiff to talk to "Dr. E." Id. at 6. From January 22, 2007, through February 15, 2007, Plaintiff spoke with Defendant Emanoilidis, the FCCC doctor, about wanting to be apart of the treatment program, but was told that the program was "full." Id. at 6. In April 2007, Plaintiff had his annual review before the circuit court Judge Kirkwood. The judge denied Plaintiff's release from the FCCC because he did not see any changes in Plaintiff's behavior. Id. at 6. The Amended Complaint is unclear when space became available in the FCCC Sex Offender Treatment Program, or when Plaintiff was again permitted to re-enroll in the treatment program. As relief, Plaintiff seeks injunctive relief and monetary damages. Id. at 7.

---

[2]"MRT" stands for Moral Recognition Therapy.

**III.**

Defendants move for judgment on the pleadings, arguing that Plaintiff has failed to allege sufficient facts that state a claim for the denial of a legally recognized constitutional right. Mot. J. Pleadings at 2. Defendants also argue that Plaintiff has failed to establish an affirmative connection between the actions of each defendant and the denial of a legally recognized constitutional right. Id.

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Riccard v. Prudential Ins. Co. of Am., 307 F.3d 1277, 1291 (11th Cir. 2002)(quoting Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001)). The Court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Cannon, 250 F.3d at 1301; Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). Judgment on the pleadings is appropriate only if it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations. Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002)(citing White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999)). As with a motion to dismiss, the "[f]actual allegations

must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-562 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). Nor, need the Court accept unsupported conclusions of law or of mixed law and fact in the complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)(en banc). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

**IV.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). The defendants do not dispute that they were acting under the color of state law. See generally Mot.

J. Pleadings.  Thus, the Court first addresses whether the Amended
Complaint sets forth a violation of Plaintiff's rights protected
under the United States Constitution or federal law.  The Court
then addresses whether the Amended Complaint alleges a causal
connection between each of the defendants and the alleged
violations.

**Constitutional Right to Treatment**

Defendants argue that Plaintiff does not have a constitutional
right to treatment in the Sex Offender Treatment Program at the
FCCC.  Mot. J. Pleadings at 6.  In support of their position,
Defendants cite to cases involving treatment of prisoners before
parole release.  Id. at 6-8.  Defendants submit that similar to the
cited parole cases, the Jimmy Ryce Act does not require
participation in, or completion of, sex offender treatment as a
prerequisite to release.  Id. at 8 (citing Fla. Stat. § 394.918).
Defendants maintain that Plaintiff could have been released from
the FCCC without participating in the Sex Offender Treatment
Program.  Specifically, Defendants argue that if the circuit court
judge found by clear and convincing evidence at the annual review
that Plaintiff would not be a threat to the public if released,
then Plaintiff would have been released.  Id. at 9.  Defendants
summarize that the facts in the Amended Complaint show that
Plaintiff was:

> unhappy with being required to do his own homework and
> then asked to be re-enrolled, a request to which the
> Defendants apparently agreed.  Even if there was a delay

> in that re-enrollment, Defendants argue that the delay is
> of no constitutional significance because nothing in the
> Jimmy Ryce Act or the administrative rules implementing
> the Jimmy Ryce Act requires participation in or
> completion of such treatment as a prerequisite to
> release.

Id. at 10.

At the outset, the Court finds that the cases defendants cite in support of their position are inapposite and not binding precedent on this Court. In particular, all of the plaintiffs in the cases cited by Defendants are prisoners, **not** involuntarily civil detainees as the Plaintiff in the instant case. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002); Helm v. Colorado, 244 Fed. Appx. 856, 858 (10th Cir. 2007); Harris v. Friel, 20060034-CA, 2006 WL 1030359 (UT App. Apr. 20, 2006); Beebe v. Heil, 333 F.Supp.2d 1011 (D. Colo. Aug. 30, 2004).

The Court recognizes that the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). Nonetheless, the Court takes judicial notice that the State of Florida enacted the Jimmy Ryce Act, by which a person who is determined to be a sexually violent predator[3] is

---

[3] A "sexually violent predator" is defined by the Act as any person who:

> (a) has been convicted of a sexually violent offense; and
> (b) suffers from a mental abnormality or personality
> disorder that makes the person more likely to engage in
> acts of sexual violence if not confined in a secure
> facility for log-term control, care, and treatment.

Fla. Stat. § 394.912(10) (2002).

-7-

required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So.2d 93, 112 (Fla. 2002); see also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[4]

A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)(stating that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Nonetheless, an individual who has been involuntarily civilly committed has liberty interests under the Due Process Clause of the Fourteenth Amendment that "require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Youngberg v. Romeo, 457 U.S. 317, 319 (1982). Further, as civil detainees, FCCC residents are afforded a higher standard of care

---

[4]"Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So.2d at 99 n.6.

than those who are criminally committed. See id. at 321-322; Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996); Lavender v. Kearney, 206 Fed. Appx. 860 (2006). Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Dolihite, 74 F.3d at 1041. Contrary to the defendant's argument that civil detainees at the FCCC do not have a federally protected right to treatment, the Fourteenth Amendment most certainly requires a State provide "minimally adequate or reasonable training" to those involuntarily committed, civil detainees. Youngberg, 457 U.S. at 319.

Here, Plaintiff first claims that he is illiterate and relied upon the assistance of other FCCC residents to complete his homework as part of the Sex Offender Treatment Program. Plaintiff was moved to a different dorm where he did not have the assistance of the residents who previously helped him with his assignment given in the treatment program. Since Plaintiff could not complete the assignments, he withdrew his consent from participation in the treatment program. The issue in this case does not involve the decision to move Plaintiff to a different dorm for disciplinary purposes. Instead, it appears one of the issues raised in the Amended Complaint involves the treatment program itself, which did not provide accommodations for Plaintiff, who is an illiterate

resident. This issue, however, falls under the purview of the Title II of the Americans with Disabilities Act (hereinafter "ADA") and Plaintiff is pursing a § 1983 claim. See Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210-12 (1998). The Amended Complaint does not contain any notice to the defendants of any ADA claim(s). See Miller v. King, 449 F.3d 1149 (11th Cir. 2006)(relying on United States v. Georgia, 546 U.S. 151 (2006)). Moreover, the Amended Complaint contains no facts showing that Plaintiff requested any accommodations in the treatment program for his illiteracy, or that any of the defendants excluded him from the program as a result of his illiteracy. In fact, Plaintiff acknowledges that he voluntarily withdrew his consent from the treatment program.

Rather, the constitutional issue raised in this case involves the delay Plaintiff encountered when attempting to re-enroll in the Sex Offender Treatment Program at the FCCC. When Plaintiff wanted to re-enroll in the treatment program, he was advised that he first should complete MRT and then talk to Doctor Emanoilidis. Plaintiff completed the "MRT" and was then told the treatment program was full. At some point, Plaintiff was re-enrolled in the FCCC treatment program. The length of the delay is not specified in the Amended Complaint. Based on the legal principles discussed above and the facts *sub judice*, the Court finds the Amended Complaint contains sufficient facts to state a constitutional claim based on the allegations that the treatment program was "full" when

Plaintiff was eligible to re-enroll in the treatment program, and the resultant delay in re-enrolling Plaintiff in the treatment program.

**Personal Participation and/or Causal Connection**

Defendants next argue that the Amended Complaint contains no "affirmative causal connection" between the alleged constitutional deprivation and each defendant's actions or inactions. Mot. J. Pleadings at 10.

Defendant GEO Group, Inc. (hereinafter "GEO") argues that Plaintiff did not identify any custom or policy promulgated by GEO that was the driving force behind the incident. Id. at 10. Thus, GEO argues that it has not been put on sufficient notice under Fed. R. Civ. P. 8. Id. at 11. GEO also argues that *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983. Similarly, Defendant Budz, the administrator of the FCCC, argues that he cannot be liable on the basis of *respondeat superior* for the actions of his subordinates. Id. at 12. Defendant Budz also submits that Plaintiff has not shown how Budz' hiring and training practices were connected to the incident *sub judice*. Id.

Indeed, the United States Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dep't of Soc. Serv., 436 U.S. 659, 690-692 (1978). Instead, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the

alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Absent personal participation by a defendant, a plaintiff must show an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone, 326 F.3d at 1360 (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

Here, the Amended Complaint contains sufficient facts alleging an affirmative causal connection between Defendants GEO and Budz and Plaintiff's claims regarding his delay in treatment at the FCCC. Defendant Budz, as the administrator for GEO that is under

contract with the Department of Children and Families to operate the FCCC, would seemingly have control over the treatment programs in place at the FCCC. While a written policy promulgated by GEO has not been submitted to the Court, Plaintiff was told on numerous occasions that the program was "full," thereby establishing a practice or custom. As such, the Motion for Judgment on the Pleadings is denied with regard to Defendant Budz in his official and individual capacities.

Defendant Fitzpatrick argues that the only allegation in the Amended Complaint against her pertains to the denial of Plaintiff's assignments. Mot. J. Pleadings at 13. In pertinent part, with regard to Defendant Fitzpatrick, the Amended Complaint alleges:

> On December 21, 2005, Plaintiff with drew [sic] his consent because, [sic] his contract stated that only phase 3-1 people can help him. Plaintiff was in H-dorm at the time and the people that w[ere] able to help Plaintiff, [sic] was in D-dorm. Plaintiff's homework kept being denied because Mrs. Fitzpatrick kept telling Plaintiff that it was not his thinking, [sic] Plaintiff is illiterate and cannot read or write. So because [sic] the only residents that could help Plaintiff were in a different dorm th[a]n Plaintiff, it made it hard on Plaintiff to complete his assignments, so Plaintiff with drew [sic] his consent.

Amended Complaint at 5. Based on a review of the facts, the Court finds Defendant Fitzpatrick is entitled to the entry of judgment as a matter of law. The facts indicate that Fitzpatrick merely denied Plaintiff's assignments. Plaintiff then voluntarily withdrew his consent to participate in the treatment program. There are no facts indicating that Fitzpatrick was personally involved in the

decision to allow Plaintiff to re-enroll in the treatment program and the resultant delay. As such, the Motion for Judgment on the Pleadings is granted with regard to Defendant Fitzpatrick in her individual and official capacities.

Next, Defendant Emanoilidis argues that the Amended Complaint does not allege or show how he contributed to the alleged constitutional deprivation. Mot. J. Pleadings at 14. Also, Defendant McNamara, who Plaintiff identifies as the "clinical therapist," argues that the allegations in the Amended Complaint do not establish a causal connection "between McNamara's words or actions and the deprivation of Plaintiff's constitutional rights." Id. at 15.

In pertinent part, the facts alleged against Defendant McNamara involve her directive that Plaintiff should complete the "MRT" before he could be re-enrolled in the treatment program. After Plaintiff completed MRT, Defendant McNamara, in fact, recommended to Doctor Emanoilidis that Plaintiff be re-enrolled in the treatment program. Defendant McNamara also directed Plaintiff to talk to Doctor Emanoilidis. These facts do not establish a causal connection between Defendant McNamara and the delay in Plaintiff's enrollment in the treatment program. The Court finds that Defendant McNamara is also entitled to the entry of judgment as a matter of law.

With regard to Defendant Emanoilidis, however, the Motion for Judgment on the Pleadings is denied. The Amended Complaint alleges

that Defendant Emanoilidis was directly involved in the delay Plaintiff encountered when seeking re-enrollment in the treatment program. Specifically, the Amended Complaint alleges that it was Doctor Emanoilidis that told Plaintiff that the treatment program was "full" once he was eligible for re-enrollment. Thus, the Court cannot say as a matter of law that Defendant Emanoilidis is entitled to judgment as a matter of law.

Last, Liberty Behavioral Health Care, Inc. (hereinafter "Liberty") is named as a defendant in this action. Prior to GEO contracting with the Department of Children and Families, Liberty was the administrator of the FCCC. There are no individuals from Liberty named as defendants in this action. From the pleadings filed in this case, it appears all of the named defendants were employees of GEO. Thus, the Court *sua sponte* dismisses Liberty.

ACCORDINGLY, it is hereby

**ORDERED**:

1. The Motion for Judgment on the Pleadings (Doc. #41, Motion) filed on behalf of Defendants Budz and Emanoilidis is **DENIED**.

2. The Motion for Judgment on the Pleadings (Doc. #41) filed on behalf of Defendants Fitzpatrick and McNamara is **GRANTED**. The Clerk of Court shall enter judgment accordingly.

3.  The Court *sua sponte* dismisses Liberty Behavioral Healthcare Inc.  The Clerk of Court shall enter judgment accordingly.

4.  Pursuant to the directions in the Court's Case Management and Scheduling Order (Doc. #39), Plaintiff must file his pretrial statement **on or before August 5, 2009.**  Defendants must file their pretrial statement **on or before August 19, 2009**.  Failure to comply with this Order may result in the imposition of sanctions.

5.  The **Clerk of Court** shall send Plaintiff a courtesy copy of the Case Management and Scheduling Order (Doc. #39) for his use in preparing his pretrial statement.

**DONE AND ORDERED** in Fort Myers, Florida, on this   27th   day of July, 2009.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record